JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Joseph Stevenson

**DEFENDANTS**

City of Philadelphia

**(b)** County of Residence of First Listed Plaintiff  Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Steven C. Feinstein, Feinstein & Fioravanti
2633 E. Allegheny Avenue
Philadelphia, PA 19134 (215) 598-2130

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [x] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Federal Arbitration Act
Brief description of cause:
Petition to Confirm Arbitration award

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes  [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
3/7/2024

SIGNATURE OF ATTORNEY OF RECORD
*Steven C. Feinstein*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<u>**CASE MANAGEMENT TRACK DESIGNATION FORM**</u>

|  |  |  |
|---|---|---|
| Joseph Stevenson | : | CIVIL ACTION |
| v. | : | |
| City of Philadelphia | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, in its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ( X )

| | | |
|---|---|---|
| 3/7/2024 | *Steven C. Feinstein* | Steven C. Feinstein |
| **Date** | **Attorney-at-law** | **Attorney for** Petitioner |
| (215) 598-2130 | (610) 410 9681 | Sfeinstein@portrichmondlawcenter.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02


American LegalNet, Inc.
www.FormsWorkFlow.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH STEVENSON     :
   Petitioner     :
       v.     :
           :
           :  Civil Action No. _____
CITY OF PHILADELPHIA   :
   Respondent.    :

PETITION TO CONFIRM ARBITRATION AWARD AND
NOTICE OF APPLICATION FOR ORDER TO CONFIRM ARBITRATION AWARD

  1.  Petitioner JOSEPH STEVENSON("Stevenson") files this Petition to Confirm Arbitration Award against Respondent CITY OF PHILADELPHIA ("Philadelphia") pursuant to 9 U.S.C §:9 and Notice of Application for Order to Confirm Arbitration Award.

INTRODUCTION

  2.  Stevenson requests confirmation of an arbitration award issued on April 23, 2023, in American Arbitration Association Case No. 01-20-0000-6900 Fraternal Order of Police v. City of Philadelphia (the "Arbitration"). A true and correct copy of the "Arbitration Award" is attached hereto as Exhibit "A".

  3.  Arbitrator Thomas P. Leonard, Esquire (the "Arbitrator") entered an award as follows:

> The City shall rescind its discharge of Grievant; expunge any and all records of the discharge from Grievant's personnel and discipline files; offer Grievant reinstatement to his former position in the 7th District and make Grievant whole for his lost wages, benefits and seniority resulting from his discharge.
>
>  The Arbitrator will retain jurisdiction over this matter to resolve any disputes over the implementation of the Award.

## PARTIES

4.      Stevenson is an individual, who at all times relevant hereto was and is a police officer employed by the City of Philadelphia residing at 1150 Haines Ave, Feasterville Trevose PA 19053

5.      Philadelphia is a political subdivision of the Commonwealth of Pennsylvania, with its principal place of business located at 1401 J.F.K. Boulevard, Philadelphia, PA 19102

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction to confirm the arbitration award at issue pursuant to 28 U.S.C. 1331, as Stevenson has a constitutionally protected property right in his employment position with Philadelphia, pursuant to the 5th Amendment of the United States Constitution as applied to the states through the 14th Amendment of the United States Constitution and the matter is subject to the provisions of the Federal Arbitration Act.

7.      This Court has personal jurisdiction over Philadelphia because Philadelphia is within the geographic boundaries of the United States District Court for the Easten District of Pennsylvania.

8.      Venue is proper for this confirmation proceeding pursuant to 9 U.S.C.§ 9 because the Arbitration Award is related to Stevenson's position of employment with Philadelphia.

## FACTUAL BACKGROUND

9.      On January 31, 2020, Stevenson was issued an intent to dismiss for two violations of Philadelphia's disciplinary code.

10.     Stevenson, through the Fraternal Order of Police, timely filed a grievance alleging that Philadelphia discharged him without just cause.

11.     The grievance ultimately resulted in the demand for an Arbitration.

12.     Stevenson was seeking reinstatement of his position and to recover all of his backpay and benefits.

13.     The Arbitrator ordered that Stevenson be reinstated to his position and that he be "made whole" for his lost wages, benefits and seniority resulting from his discharge.

14.     Philadelphia did not appeal the award and it became final.

15.     Despite the final award, Philadelphia has not complied with the Arbitration Award.

**OVERTIME PAY**

16.      Philadelphia was ordered to make Stevenson "whole".

17.     Making Stevenson "whole" requires that Philadelphia issue payment of all overtime that Stevenson would have earned but for his termination.

18.     Prior to termination, Stevenson was earning a minimum of $36,000.00 of overtime pay per year. The Award covered a period of time from January 31, 2020, until July 11, 2023, 2023.

19.     Pursuant to the Arbitration Award, Stevenson was entitled to a minimum of $120,920.38 in overtime pay from Philadelphia during his period of termination.

20.     Philadelphia issued total overtime payment of $21,944.55.

21.     It is believed that Philadelphia calculated the overtime pay based on an average number of hours amounts police officers for period of time covered under the Award.

22.      There is nothing in the award that would allow Philadelphia to base Stevenson's overtime pay based on an average of overtime pay for other officers.

23.     Rather, the Award makes it clear that Stevenson was to be made whole.

24.     By necessarily implication, being made whole requires that any calculation for overtime pay must be based on Stevenson's own history of working overtime.

25.     By definition, this means that Philadelphia was obligated to pay Stevenson all monies which he would have earned during the period of time covered by the award.

26.     Philadelphia has failed and refused to issue payment to Stevenson for all of his overtime pay.

## HOLIDAY AND VACATION PAY

27.     Philadelphia police officers are given holiday and vacation pay as part of the compensation backage.

28.     Philadelphia Police officers are given a choice to take unused holiday and vacation pay as part of their salary or to "bank" them until retirement.

29.     Stevenson has always taken his unused holiday and vacation pay as salary and never banked the days.

30.     Despite being ordered to pay all backpay, Philadelphia unilaterally decided to bank all of Stevenson's holiday and vacation pay until his retirement.

31.     Philadelphia has deprived Stevenson of the use of the said pay despite being ordered to remit all of his backpay.

32.     There is nothing in the award that would allow Philadelphia defer any portion of the said backpay until Stevenson's retirement.

## BENEFITS

33.     The award required Philadelphia to issue all benefits to Stevenson.

34.     Upon information and belief, Philadelphia has failed and refused to provide Stevenson with financial compensation for lost benefits such as;

- Medical Insurance benefits for three years

- Uniform checks for three years

- Covid vaccination bonus

- Retention bonus of 2023.

## ACCOUNTING

35.     Stevenson has requested a full accounting and breakdown of the monies he received

on multiple occasions to determine what monies and benefits are owed to him.

36.     Philadelphia has failed and refused to provide him with the accounting and/or

breakdown.

## MOTION TO CONFIRM ARBITRATION AWARD AND ENTER JUDGMENT

37.     The Federal Arbitration Act ("FAA") is applicable to this case.

38.     The FAA provides that a "written provision in ... a contract evidencing a transaction

involving commerce to settle by arbitration a controversy thereafter arising out of such contract or

transaction ... shall be valid, irrevocable, and enforceable, save upon any grounds as exist at law

or in equity for the revocation of any contract." 9 U.S.C. § 2.

39. The FAA states, in relevant part:

> If the parties in their agreement have agreed that a judgment of the court shall be
> entered upon the award made pursuant to the arbitration, and shall specify the court,
> then at any time within one year after the award is made any party to the arbitration
> may apply to the court so specified for an order confirming the award, and
> thereupon the court must grant such an order unless the award is vacated, modified,
> or corrected as prescribed in sections 10 and 11 of this title. If no court is specified
> in the agreement of the parties, then such application may be made to the United
> States court in and for the district within which such award was made.

40.     This case meets all of the requirements for confirmation of the award.

41.     Pursuant to 9 U.S.C.§ 9, Stevenson seeks confirmation of the Arbitration Award

and a judgment in conformity with the Final Award against Philadelphia.

42.     Stevenson seeks an order requiring Philadelphia to comply with the Arbitration Award and provide restitution for those benefits of which it was required to pay pursuant to the Award, which it thus far has failed to do.

## PRAYER FOR RELIEF

WHEREFORE, Stevenson respectfully requests judgment as follows:

1.     Confirmation of the Arbitration Award;

2.     A full accounting of Stevenson's overtime pay within ten days of the date of this Order, followed by a Judgment of this Court against Philadelphia in the amount of the difference between the amount owed less the amount paid.

3.     A full accounting of all holiday and vacation pay that Philadelphia "banked" within ten days of the date of this Order followed by a Judgment of this Court against Philadelphia in the amount improperly banked.

4.     A full accounting of all medical benefits, unform checks, covid vaccination bonuses and bonuses and retention bonuses due to Stevenson followed by a Judgment of this Court against Philadelphia in the amounts owed.

5.     Any other relief which the Court deems just and proper, including, but not limited to interest at the rate of 6% from April 23, 2023, to the date of this Order.

FEINSTEIN & FIORAVANTI


By: *Steven C. Feinstein*
_____
          Steven C. Feinstein, Esquire
          Attorney for Petitioner

Exhibit "A"

## AMERICAN ARBITRATION ASSOCIATION

In the Matter of Arbitration between

| | | |
|---|---|---|
| Fraternal Order of Police, Lodge # 5 | : | AAA Case Number: 01-20-0000-6900 |
| and | : | |
| City of Philadelphia | : | Grievance: Sgt. Joseph Stevenson Discharge |

Opinion and Award

| | |
|---|---|
| Hearing Date: | January 23,  2023 |
| Briefs Received: | March 1 and March 22, 2023 |
| Arbitrator: | Thomas P. Leonard, Esquire |

Appearances:

| FOP Lodge #5 | City of Philadelphia |
|---|---|
| Thomas M. Gribbin, Jr.,  Esquire | Benjamin L. Shectman,  Esquire |
| Willig, Williams  & Davidson | Cozen O'Connor |

## Procedural History

Pursuant to the terms of a Collective Bargaining Agreement (CBA) between the Fraternal Order of Police Lodge 5 (FOP)  and the City of Philadelphia (City) and the Labor Arbitration Rules of the American Arbitration Association, the parties appointed the undersigned arbitrator to hear and decide the dispute described below.  Upon due notice, an arbitration hearing was held on October January 23,  2023  in the Philadelphia offices of the American Arbitration Association.

At the arbitration hearing,  the parties presented testimony, cross-examined witnesses and introduced documentary evidence.   The parties made closing arguments on the record. Additionally, on March 1, 2023, the City submitted a post-hearing brief on evidentiary issues. On March 22, 2023,  the FOP filed a reply brief.

## Issues

Did the City have just cause to discharge the Grievant,  Sergeant Joseph Stevenson, and and if not, what shall be the remedy?

## Facts

Sergeant Joseph Stevenson (Grievant) was stationed  in the City's 7th District prior to his discharge.  On or about ▮▮▮▮▮▮▮▮▮, the City learned that Grievant had been arrested by the Lower Southampton Township Police Department (LSTPD) after LSTPD responded to a domestic violence call by Grievant's wife from their home at around 3:46 A.M. that morning. Grievant was charged with the following criminal offenses: (1) Strangulation – Applying

2

Pressure to Throat or Neck (a felony); (2) Simple Assault (a misdemeanor); and (3) Harassment –
Subject Other to Physical Contact (summary offense).

The Grievant's supervisor in the 7th District was notified of the charges.   He notified the
Philadelphia Police Department Internal Affairs Division (IAD), which assigned  Sergeant
Dayton Bennett to investigate.   At this arbitration  hearing ████████ testified about his
investigation.

As part of his investigation, ████████ obtained  the report of responding LSTPD
Officer ████████, as well as a statement by Mrs. Stevenson made at 5:00 A.M. on
████████. In the statement, ████████ reported that, after returning home from a
night of drinking, Grievant made threats and "then put both hands around my neck and squeezed
while throwing my head against the door 3 times before letting go." In his report, Officer
████████ reported that, upon his arrival, Mrs. Stevenson "was crying and upset. She had red
marks on the front of her neck." ████████ reported that LSTPD "took digital pictures of
████████'s injuries with the Corporal [sic] camera. BWC used." In addition to
reviewing the statements of ████████ and ████████, ████████ testified that he
drove to LSTPD and reviewed the body worn camera (BWC) images described in ████████
████████'s report. ████████ testified that such images showed the red marks around ████
████████'s neck – consistent with the observations and statements of ████████ and ████
████████ further testified that he asked LSTPD for a copy of the BWC recording
but that LSTPD did not provide it because of the open criminal case against Grievant. The
LSTPD later told ████████ the recording no longer existed.

On January 17, 2019, ████████s interviewed the Grievant.  He provided the Grievant his Gniotek warnings and rights.  The Grievant declined to provide a statement on the advice of counsel.  ████████ informed the Grievant that he would be suspended for 30 days with an intent to dismiss.

████████ delivered his report to IAD ████████████████ who concluded that the matter was appropriately handled as a Commissioner's Direct Action instead of as a Police Board of Inquiry (PBI).

On January 31, 2020, based on ████████'s report, the Department issued the Grievant an intent to dismiss for two violations of the Disciplinary Code.

The first violation stated:

**CONDUCT UNBECOMING, SECTION 1-§026-10** (Engaging in any action that constitutes the commission of a felony or a misdemeanor which carries a potential sentence of more than (1) year.  ns)  The charge stated:

On Sunday, ████████████, approximately 3: 46 AM, Lower. Southampton Township Police responded to ████████████████ in reference to a report of a domestic incident.  Upon arrival, ████████████ observed redness around the neck of ████████████ your wife, who further reported a complaint of pain to the back of her head due to repeatedly being thrusted against a wall while choked by you. ████████████ was transported to ████████████████ where she was treated for her injuries and released.

The second violation stated:

**CONDUCT UNBECOMING, SECTION 1-§ 001-10** (Unspecified).

Quoted the same facts as above with the addition of:

You were subsequently arrested by the Southampton Township Police Department for your actions during this domestic incident. The course of conduct you engaged in indicates that your have little or no regard for your Responsibility as a member of the

4

Philadelphia Police Department.  Therefore, you will be dismissed after being placed on a 30-day suspension.

On January 21, 2020, the FOP filed the present  grievance on behalf of Sgt. Stevenson alleging that the Department discharged him without just cause.

The criminal charges against the Grievant  later proceeded to court.   The official court docket shows that  on  December 7, 2021,  the Bucks County Court of Common Pleas accepted the Grievant's plea of nolo contendere to two summary charges of disorderly conduct-unreasonable noise 18 § 5503 §§ A2.  All fines were waived by the Court.  (Union Exhibit 1). The LSTPD withdrew the other two more serious charges.

## Discussion

The burden of proof in a discipline case is on the employer to show that it had just cause for the discipline. The FOP contends that the City has not met its burden of proving just cause to discharge the Grievant.  In particular, the FOP contends that the City has not proven, by sufficient evidence,  that  the Grievant engaged in the conduct that was the basis for finding that he violated the Disciplnary Code.

### The FOP's Position

The FOP argues that the evidence is insufficient because the City's case is based solely on hearsay  evidence. Although the FOP acknowledges that strict evidentiary rules are not legally binding in labor arbitration hearings, relying exclusively on hearsay "is wholly unsupported in the arbitration literature." Bamberger's, 59 LA 879, 882 (Glushein 1972). Moreover, written

5

statements are also hearsay which arbitrators have consistently concluded are entitled to little, if any, weight.

Pennsylvania caselaw has defined hearsay as an "out-of-court statement offered to prove the truth of the matter asserted." Heddings v. Steele, 514 Pa. 569, 526 A.2d 349 (1987).

Under Pennsylvania Rule of Evidence 801, hearsay means "a statement that the declarant does not make while testifying at the current trial or hearing; and a party offers in evidence to prove the truth of the matter asserted in the statement." A "statement" means "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Pa.R.E. 801(a), (c).

The FOP points out three flaws in the sufficiency of the City's evidence. The City did not produce the in-person testimony of ███████████ nor did it compel her appearance by subpoena. The City did not produce the in-person testimony of any police officer from the Lower Southampton Township Police Department nor compel their appearance by subpoena. The City did not produce the body worn camera (BWC) video of the responding LSTPD officers from ███████████, representing that the video no longer existed.

Instead, the City produced and relied on a written statement made by ███████████, a written statement of LSTPD ███████████ and the testimony of Investigator ███████████ regarding what he observed when he viewed the BWC video purporting to be from responding LSTPD officers from ███████████.

Arbitrators have consistently held that hearsay evidence alone is not enough to sustain an employer's heavy burden of proving misconduct as part of the just cause calculus. Kellogg Co., 138 LA 1595, 1600 (Douglas Bonney 2018). In large part this is so because hearsay evidence,

including unsworn written statements, cannot be subjected to the rigorous truth-finding tests of cross-examination.

████████'s testimony and the related documentary evidence submitted by the City is plain hearsay.

The FOP addresses the City's arguments that hearsay exceptions under the Pennsylvania Rules of Evidence and the related case law allow the arbitrator to rely on its evidence.  These exceptions  bear solely on the admissibility at trial of evidence that would otherwise be properly excluded as hearsay.  Also, the FOP points out that the heart of the issue here is not whether the hearsay should be admitted, but rather the weight that the arbitrator can properly accord to it. So, even though hearsay is generally admissible in labor arbitration, it cannot, standing alone, be received for the truth of the matter asserted, especially where it bears on the ultimate issue in the case, namely, here, whether the grievant physically assaulted his wife.

Thus, ████████'s statements  should not be accepted as proof that the grievant engaged in conduct deemed unbecoming under the Police Department's Disciplinary Code. Further, ████████'s testimony regarding what he viewed in the BWC video is also insufficient to substantiate the grievant's guilt of the charged misconduct, because it is ████████'s statement which provides context and meaning to that circumstantial evidence. Such evidence remains subject to alternative interpretations, only one of which supports the City's case.

In sum,  the arbitrator must afford the City's offered evidence no weight. Such a finding is wholly supported by and consistent with the decisions in two recent arbitration decisions between the parties and submitted as persuasive authority by the FOP at the hearing: City of Philadelphia and FOP Lodge No. 5; AAA Case No. 01-17-0005-3521 (Discharge of Anthony

Abrams) (Reilly, 2018) and City of Philadelphia and FOP Lodge No. 5; AAA Case No. 01-20-0007-3522 (Discharge of Javier Montanez) (Reilly, 2021).

### The City's Position



The City argues that ███████████ s testimony should be afforded significant weight in the determination of whether the City had just cause to discharge Grievant. The City cites a case where the arbitrator admitted testimony about a video. In Fraternal Order of Police, Lodge No. 5 v. City of Philadelphia (Josey) (AAA No.01-16-0000-9296 (Peck 2016), then-Commissioner Ross testified that he made a decision not to promote the grievant based on his review of a cell phone video of an incident at the 2012 Puerto Rican Day Parade. The arbitrator found that "Ross reviewed the video . . . and recalled that it depicted Lt. Josey taking a swing in the direction of a woman," and that "Commissioner Ross noted that [the video] played a significant role in his determination to pass over Lt. Josey for promotion, noting '… my decision was made exclusively off of what I saw in the video and what I remember.'"

The Arbitrator should admit and give significant weight to ███████████ 's testimony as to the red marks on ███████████ 's neck. Despite cross-examining ███████████ , the Union did not dispute the fact or substance of his observations, which align with ███████████ 's and ███████████ 's statements discussed below. For these reasons, ███████████ 's unchallenged testimony is admissible, consistent with the other operative evidence offered by the City, and supports a finding that Grievant engaged in the misconduct for which the City discharged him.

Second, the City argues that ███████████ s Statements and ███████████ s statements in his report fit within exceptions to the rule against hearsay evidence. ██████

███████████ 's statements were "excited utterances," defined as a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."

PA.R.E. 803(2). Excited utterances are admissible even when the declarant does not testify provided that, "at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance. It is the spontaneity of . . . an excited utterance [that] is the source of reliability and the touchstone of admissibility." Commonwealth v. Gray, 867 A.2d 560, 570-71 (Pa. Super. 2005). There is no temporal component, and a police officer's testimony that the declarant was "upset" suffices to establish the requisite emotional state. See Commonwealth v. Coker, No. 665 EDA 2017 (Pa. Super. Mar. 22, 2018). Here, Mrs. Stevenson was "crying and upset" during her report that Grievant had strangled and assaulted her; additionally, there is no evidence that her emotional state changed before her 5:00 A.M. written statement. Thus, Mrs. Stevenson's statements were excited utterances and admissible under this exception to the hearsay rule. PA.R.E. 803(2).

Third, these statements were also admissible "present sense impressions," or "statement[s] describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Pa.  R.E. 803(1). The Comment to Rule 803(1) explains, in pertinent part:

> For [the present sense impression] exception to apply, declarant need not be excited or otherwise emotionally affected by the event or condition perceived. The trustworthiness of the statement arises from its timing. The requirement of contemporaneousness, or near contemporaneousness, reduces the chance of premeditated prevarication or loss of memory. Pa.R.E. 803(1).

Although courts have not precisely defined the term "immediately thereafter," in Estate of Dinnien v. Dinli Metal Indus. Co., 2006 Phila. Ct. Com. Pl. LEXIS 485 (2006), the court found that a declarant's statements were present sense impressions despite the passage of an unspecified amount of time between the declarant's observations and his statements at issue. In that products liability case involving a deceased motorist, the wife of the deceased declarant

9

testified at trial "that she went to the hospital right away once she was told . . . about the accident" and the declarant told her "that the grip came off the bike while he was riding it." Id. at *29-30. The court did not describe the distance between the location of the declarant's wife and the hospital at the time she was told about the accident; by the same token, the court did not specify the amount of time that passed in the interim. Nonetheless, the court found that "John's statement to his wife immediately following the accident was properly considered a present sense impression and there was no error in allowing this testimony." Id. at *32.

Similar to Dinnien, only a short amount of time passed between the 3:46 A.M. police call and the statements at issue in this case. ▆▆▆▆▆▆ signed her statement at 5:00 A.M., and, according to ▆▆▆▆▆▆'s report, she had already made verbal statements to LSTPD upon their arrival to the Stevenson home. ▆▆▆▆▆▆ made his report at 5:43 A.M. Both fall within the present sense impression exception. Importantly, ▆▆▆▆▆'s observations of the BWC images corroborate these statements and establish that ▆▆▆▆▆▆ had red marks on her neck. This further supports the trustworthiness of these statements, which is the purpose for the present sense impression exception. See Comment to PA.R.E. 803(1).

In sum, the arbitrator should admit and give weight to both Sgt. ▆▆▆▆▆'s testimony regarding the BWC recording and the statements of ▆▆▆▆▆▆ and ▆▆▆▆▆▆.

### Analysis and Conclusion

Having considered the competing arguments of the parties, I must conclude that the City's case for finding that the Grievant's conduct violated the Disciplinary Code is not supported by competent evidence.

First, as the FOP has pointed out, the case is built on hearsay evidence. ████████'s testimony about the Grievant's conduct rests on the "out of court" statements in ████ 's report and a body worn camera video, both of which were not subject to cross examination.

Second, the FOP has squarely addressed the City's argument that exceptions to the hearsay rules apply in this case. The exceptions are the "excited utterances" exception of Ms. ████████ and "the present sense impressions" of ████████ These arguments are not persuasive since the statements that the City wants the exceptions to cover are themselves part of a hearsay document, ████████'s report. ████████ was not present at this arbitration to testify to what he observed and to be cross-examined.

Third, the FOP has also squarely addressed the offer of the evidence of the marks on ████ 's neck as seen in the BWC video as circumstantial evidence of the Grievant's misconduct. ████████ testified that he viewed the BWC video and  saw the marks on ████ 's neck as part of the video. However, as the City has pointed out, the video from the BWC is itself hearsay. The BWC video was not offered in this arbitration hearing because the LSTPD no longer has it.

Without direct non-hearsay evidence of the facts of the night in question, the Grievant has been denied the opportunity to cross examine the witnesses who are the foundation of the City's charges, a fundamental right by which an accused is allowed to test the reliability of the offered evidence.   Having only produced hearsay evidence, the City has not presented competent legally admissible evidence to prove that it decided that the Grievant engaged in misconduct that violated of the Disciplinary Code.

11

I must conclude that based on the competent evidence presented to this arbitrator, the City has not met its burden of proof that its decision to discharge the Grievant was for just cause. The City's proof rests entirely on hearsay statements. It is unfair to base a decision to discharge an employee on hearsay evidence. Accordingly, the City did not prove that it had just cause to discharge the Grievant for the misconduct alleged in the statement of charges.

## Award

For the reasons stated above, the FOP's grievance is sustained. The City has not met its burden of establishing just cause for the discharge of Grievant, Sergeant Joseph Stevenson.

The City shall rescind its discharge of Grievant; expunge any and all records of the discharge from Grievant's personnel and discipline files; offer Grievant reinstatement to his former position in the 7th District and make Grievant whole for his lost wages, benefits and seniority resulting from his discharge.

The Arbitrator will retain jurisdiction over this matter to resolve any disputes over the implementation of the Award.

Harrisburg, Pennsylvania
April 24, 2023

Thomas P. Leonard, Esquire